**THE FOLLOWING ORDER IS APPROVED.**

Dated: September 14, 2011

_____
**Hon. Thomas S. Utschig
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

-------------------------------------------------------------------------------------------------------

In re:                                                                                Case Number: 11-12489-7

SCOTT T. FRYSETH and
ELIZABETH M. FRYSETH,

                    Debtors.

-------------------------------------------------------------------------------------------------------

DECISION AND ORDER

In today's world it often seems that even seemingly simple transactions, such as the purchase of a car, can quickly transform into a tangled web of complicated commercial relationships. This case presents exactly such a scenario. The specific matter before the Court is a motion by Systems & Services Technologies, Inc., to reconsider an order which avoided a lien on a car. The preliminary question is whether reconsideration is appropriate; the larger question is the validity of the creditor's lien. The parties submitted the matter to the Court and a telephonic hearing was held on August 16, 2011. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

The debtors bought a 2006 Kia Sedona in January of 2010. The purchase was financed by M&I Dealer Finance, Inc. The debtors signed a Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement. M&I properly perfected its lien in the vehicle. In December of 2010, M&I assigned its interests in numerous loans, including this one, to SunTrust Bank.[1] The debtors filed their chapter 7 bankruptcy petition in April of 2011. Shortly after filing, they sought to avoid the security interest on the grounds that the lien was unperfected as to SunTrust Bank. SunTrust did not respond to the motion. An order was signed granting the motion on May 19, 2011. A little over a month later, Systems & Services Technologies, Inc., filed a motion for reconsideration as well as an objection to the motion to avoid the lien.[2]

The debtors noted the creditor's initial failure to oppose the lien avoidance motion. The creditor responded by contending that it did not receive notice of the motion and was consequently unable to oppose it. It appears that notice was not sent to the address listed on the creditor matrix. However, the debtors' attorney filed documentation indicating that her office attempted to contact the creditor in order to obtain an address for "good" service of the motion. The question is whether there are sufficient grounds to permit the creditor to interpose a late

---

[1] The debtors initially sought proof that the loan was actually among the thousands assigned to SunTrust. SunTrust did furnish some proof of this, and at the final hearing on the matter the debtors no longer appeared to dispute the fact of the assignment itself. Instead, they focused on the effect of the assignment, which they contended rendered the lien unperfected as to SunTrust.

[2] The debtors did not dispute that the movant is authorized to pursue the claim on behalf of SunTrust.

objection notwithstanding the debtors' efforts to obtain service.  The allowance of a tardy responsive pleading is authorized under Fed. R. Bankr. P. 9006(b)(1) in instances in which the "failure to act was the result of excusable neglect."  The Supreme Court has recognized that excusable neglect is an "elastic concept." Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 388, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).  As such, courts are permitted to accept late filings caused by inadvertence, mistake, or carelessness when the surrounding circumstances justify doing so.  Id. at 392.  In determining whether excusable neglect exists, courts consider such things as the danger of prejudice to the non-moving party, the length of the delay, its potential impact on the proceedings, the reason for the delay, and whether the moving party acted in good faith.  Id. at 395.

After a review of the circumstances, the Court finds sufficient cause to allow reconsideration and the untimely opposition to the motion.  While it remains unclear whether the creditor actually received notice, the creditor and its counsel appear to have acted in good faith and attempted to rectify the problem quickly.  The delay in responding to the debtors' motion was minimal and the debtors are not unduly prejudiced by consideration of the merits – after all, if the debtors are actually entitled to the relief sought in their original motion, reconsideration will lead to the same result.  In contrast, the creditor will clearly suffer harm (i.e., the loss of its security interest), and the facts justify confirming whether that result is warranted.

Under the version of Wis. Stat. § 342.19 applicable when the debtors purchased their car in January of 2010, a security interest in a vehicle was

perfected upon delivery of certain required documents (such as the existing certificate of title and an application for a certificate of title containing the name and address of the secured party) and the required fee to the Wisconsin Department of Transportation.[3]  Under § 342.19(1), a security interest in a vehicle is not valid "against creditors of the owner or subsequent transferees or secured parties" unless it is perfected in accordance with the statutory provisions.  The debtors contend that SunTrust did not perfect its interest in the vehicle in accordance with the statute.  As such, they believe that a bankruptcy trustee, acting as a hypothetical lien creditor, could utilize the "strong arm" powers of 11 U.S.C. § 544 to avoid the lien.  They seek to utilize the same avoidance powers pursuant to 11 U.S.C. § 522(h), which allows a debtor to stand in the shoes of the trustee in certain instances.

In support of their position, the debtors cite the case of <u>Scaffidi v. Kenosha City Credit Union (In re Moeri)</u>, 300 B.R. 326 (Bankr. E.D. Wis. 2003).  In <u>Moeri</u>, the chapter 7 trustee brought a preference action to avoid the lien of a lender who had failed to perfect its security interest in the debtor's vehicle until long after it advanced the funds which allowed the debtor to pay off the pre-existing loan on the car.  The debtor had originally acquired the car under a vehicle lease which contained an option to purchase.  The debtor exercised the option to purchase, which was financed by the original lender.  A few months later, the debtor applied

---

[3] Effective July 2010, Wis. Stat. § 342.19(2) provides that secured parties who are not individuals are obligated to file a "security interest statement" in the manner specified in § 342.245(1) in order to perfect a lien.  Section 342.245(1) contemplates electronic filing of lien documents.

for refinancing with another lender, who then paid off the original loan but experienced delays in perfecting its own lien against the vehicle. The debtor filed for bankruptcy, and the trustee argued that the creditor's belated perfection of its lien constituted a preferential transfer which could be avoided under 11 U.S.C. § 547. The court ruled in favor of the trustee. Specifically for purposes of this case, the court noted:

> Had [the original lender] made an assignment of its lien to the defendant in accordance with Wis. Stats. § 342.21, it would have held a continuing interest in [the original] lien with the ability to "piggy back" on [that] lien. But that did not happen here.

300 B.R. at 330. In rejecting the argument that the first lender had "in effect" assigned its lien, the court stated emphatically that "[t]here was no assignment here - absolutely or otherwise within the meaning of Wis. Stats. § 342.21." Id.

The debtors read Moeri as supporting their position that SunTrust needed to file its own application with the Wisconsin Department of Transportation in order to perfect its lien. But Wis. Stat. § 342.21(1) provides as follows:

> [A] secured party may assign, absolutely or otherwise, the party's security interest in the vehicle to a person other than the owner without affecting the interest of the owner or the validity of the security interest, but any person without notice of the assignment is protected in dealing with the secured party as the holder of the security interest and the secured party remains liable for any obligations as a secured party until the assignee is named as secured party on the certificate.

Further, § 342.21(2) clearly states that "the assignee *may but need not*, to perfect the assignment, have the certificate of title endorsed or issued with the assignee named as secured party" (emphasis added). Unlike the present case, the Moeri court was faced with a situation in which the original lender *released* its lien as part

5

of a refinancing arrangement, undoubtedly with the expectation and understanding that the subsequent lender would act to perfect its own lien.

A review of the relevant provisions clearly reflects that a debtor-initiated refinancing, in which a second lender "takes out" the first one, is treated differently under the law than a transaction in which the first lender simply sells (or assigns) its lien. In general, the law treats the first scenario as consisting of two separate transactions, in which the second lender is independent from the first (and thus obligated to perfect its own lien). In the assignment context, the law allows the assignee to stand in the shoes of the first lender – without requiring the assignee to separately perfect its lien. It is true that the ultimate effect of both transactions is the same, in that a new party now holds the security interest. But the fact that a refinancing lender is obligated to jump through additional hoops in order to perfect its lien does not permit the Court to ignore the clear impact of the Wisconsin statutes regarding *assignments* of vehicle security interests.[4]

As the debtors acknowledge, SunTrust did not refinance their loan with M&I (indeed, they stress that they did not consent to the assignment and were not aware of it until after it had occurred). M&I did not release its lien. Instead, SunTrust received an *assignment* of M&I's lien, and is entitled to the protections found in Wis. Stat. § 342.21. Under the statute, SunTrust could have requested a

---

[4] Instead, cases such as Moeri or King v. Ernie von Schledorn, Inc. (In re McAlister), 371 B.R. 923 (Bankr. E.D. Wis. 2007) (in which a dealership could not claim to be the "assignee" of a financing lender who reneged on its decision to finance the debtor's car purchase), simply illustrate what happens to creditors who are not fortunate enough to have been the recipient of an assignment under Wis. Stat. § 342.21.

new certificate of title, but it was not required to do so in order to perfect its interest in the debtors' vehicle. Once M&I assigned its security interest to SunTrust, the transfer occurred "without affecting the interest of the owner or the validity of the security interest." See Wis. Stat. § 342.21(1).[5]

Several other recent cases support this conclusion. In Wells Fargo Equip. Fin. v. Rodriguez (In re Clark Contr. Servs.), 438 B.R. 913 (W.D. Tex. 2010), the bankruptcy court initially ruled that the Texas Certificate of Title Act required an assignee to obtain a new title in order to perfect its lien in a motor vehicle. On appeal, the district court reversed, finding that the retitling requirements were permissive rather than mandatory. Id. at 925. The court noted that under the Uniform Commercial Code, the general rule is that an assignee is *not* required to file to perfect its interest. Wisconsin's version of the UCC reflects this as well. Wis. Stat. § 409.310(3) provides that "[i]f a secured party assigns a perfected security interest . . . a filing under this chapter is not required to continue the perfected status of the security interest." Comment 4 to this section references certificate-of-title statutes (such as Wis. Stat. § 342.19, the section cited by the debtors), and indicates that:

> *Unless the statute expressly provides to the contrary,* the security
> interest will remain perfected . . . even if the assignee takes no action

---

[5] The debtors repeatedly emphasized that they were not aware of the transfer and did not consent to it. They have not identified any statutory or contractual provision which predicated the validity of the assignment upon notice or consent. Section 342.21 clearly indicates that an assignment has no impact upon "the interest of the owner." Had there been a payment dispute, their lack of notice might have been relevant (as the statute operates to "protect" a party without notice who deals with the original secured party), but that is not the case here.

>to cause the certificate of title to reflect the assignment or to cause its name to appear on the certificate of title. (Emphasis added)

Within the Seventh Circuit, an Indiana bankruptcy court has also rejected the argument that an assignee of a vehicle lien was obligated to obtain a new certificate of title. In Boston v. Chrysler Fin. Servs. Americas LLC (In re Scott), 427 B.R. 123 (Bankr. S.D. Ind. 2010), a chapter 7 trustee sought to avoid an assigned security interest on the grounds that the assignee failed to have its name noted on the certificate of title. The bankruptcy court concluded that Indiana's certificate of title laws did not require a new certificate of title where there was not a related sale or transfer of an interest in the vehicle itself (as the court observed, "[T]he transfer at issue in this proceeding is of the Contract, not the Vehicle"). Id. at 132. In the absence of any provision which *explicitly* required the assignee to place its name upon the certificate of title, the court found that the provisions of Indiana's version of UCC § 9-310 controlled, and no additional filing was required to maintain the perfected status of the security interest. Id. at 139-140.

Neither Texas nor Indiana appear to have a statute directly analogous to Wis. Stat. § 342.21. But this statute clearly articulates the Wisconsin legislature's expectations regarding the assignment of motor vehicle liens. Far from "expressly" providing a requirement contrary to the provisions of Wis. Stat. § 409.310(3), this section articulates an identical policy regarding the assignment of security interests. Assignees of vehicle liens "may but need not, to perfect the assignment," have the certificate of title reissued. Under Wisconsin law, instances which involve the actual assignment of a security interest do not result in the

8

creation of a new lien (or the attendant requirement to perfect that lien).  See Moeri, 300 B.R. at 330 (assignment of lien creates continuity of interest and the ability to "piggy back" on an earlier lien); McAlister, 371 B.R. at 925 (creditor could not argue that the release of a security interest by another entity "in effect" placed it in an assignment position); see also Gaines v. Ford Motor Credit Corp. (In re Gaines), 414 B.R. 494, 497 (Bankr. E.D. Ark. 2009) ("most courts recognize that the assignment of a lien does not create a 'new' lien").

Consequently, the Court cannot agree with the debtors that the chapter 7 trustee could have avoided SunTrust's lien under § 544(a).  Moreover, the Court would note that the debtors are not entitled to avoid the lien in any event.  Section 522(h) provides that the debtor may avoid transfers under §§ 544, 545, 547, 548, or 549 if the trustee does not attempt to avoid the transfer, but only if the debtor could have exempted the property under § 522(g)(1).  That section provides that the debtor may exempt property only if "such transfer was not a voluntary transfer of such property by the debtor."  While the debtors argue that they did not "voluntarily" transfer the lien to SunTrust, the law does not regard the assignment of a security interest to be the creation of a new lien.  The transfer is of the contract (or claim) rather than a new interest in the debtors' vehicle.  Scott, 427 B.R. at 132.

Under Wisconsin law, M&I's assignment to SunTrust affects neither the owner's interest nor the validity of the original security interest.  The bankruptcy code defines a "transfer" broadly, including the "creation of a lien" and any mode of "disposing of or parting with" property or an interest in property.  See 11 U.S.C. § 101(54).  For bankruptcy purposes, property rights are created and determined

9

by reference to state law unless federal law requires a different result.  In re Kuehn, 563 F. 3d 289 (7th Cir. 2009).  Lien perfection is likewise a matter of state law.  McAlister, 371 B.R. at 925.  Here, the lien was established (or created) by the original granting of a security interest to M&I Bank, which the debtors concede was a voluntary transfer.  Since Wisconsin law dictates that an assignment does not affect the validity of the underlying security interest, the nature of the assignment as a "mode of disposing of" an interest in property must also be defined by the original transaction.  Because the original transfer of the interest in the vehicle was voluntary in nature, the debtors can neither exempt the transferred interest nor avoid it.

    Accordingly,

    IT IS ORDERED that the motion for reconsideration is granted.  The order granting the debtors' motion to avoid the lien of SunTrust Bank is vacated, and that motion is denied in accordance with the terms of this Order.

###